Good morning, Your Honors. Devin Burstein, Federal Defenders of San Diego, on behalf of Mr. Ramirez. Your Honors, permitting a defendant to offer a defense is of little value if the jury is not informed that the defense, if it is believed or if it helps create a reasonable doubt in the jury's mind, will entitle the defendant to a judgment of acquittal. And that's this court's language from Escobar de Bright, and we believe it essentially encapsulates the problems with Mr. Ramirez's convictions. The district court first erred in denying Mr. Ramirez's request for a missing witness instruction, and then compounding the harm from that error, the district court improperly precluded Mr. Ramirez from arguing inferences about the government's failure to call Mr. Bejaran. And then sua sponte instructed the jury that it couldn't consider any reasons why the government didn't call Mr. Bejaran. I think the judge said speculate. Correct. The judge used the word... It didn't exactly say it couldn't consider any reasons, but it couldn't speculate. Well, the language the judge used is there was no evidence given about why Mr. Ramirez wasn't, Mr. Bejaran wasn't called, and you can't speculate as to why. In other words, you can't consider any reasons why he wasn't called. We know from your opinion in Kajian, Chief Judge Kaczynski, that that's not true, where you repeatedly made clear that that argument is indeed proper. You specifically wrote that the defendant there said the jury should infer that the missing witness's testimony, Norian, would have undercut the government's case. And you wrote, this wouldn't have been a remarkably strong inference, but it would have been a permissible one. And you wrote that on the back of this court's decision in NOAA, which specifically said that the failure of a party to produce a material witness who could elucidate matters under investigation gives rise to a presumption that the testimony of the witness would be unfavorable to that party. So certainly, it was a permissible inference. As a matter of law, it was a permissible inference. And so the district court, in telling the jury it couldn't draw that inference, was essentially violating. There was no objection to this, right? Well, I think the short answer is, in the way you phrased the question, is yes. There was no direct objection there. But that's not the full picture. The full picture is that Mr. Ramirez requested the missing witness instruction. There was significant argument about that. Then said to the court, I'm going to make my arguments. The court said, well, we'll see about that. Starts her arguments. And then there's an objection from the government. The court calls an improper argument in front of the jury. And then once there's a break, says, I'm going to instruct the jury to cure this improper argument. And then just goes ahead and does it. This wasn't a situation. So normally, we were talking about what normally happens. You know, the district court will give you a packet of jury instructions. Are there any objections? You go through it. But here, I mean, the position of Mr. Ramirez could not have been more clear about his view of the missing witness argument. And, in fact, My question then is whether harmless error could kick in. It seems it's a little bit different than in the Escobar to Bright case, where it really was a central part of the theory. I mean, here we have a guy who they really don't want to call, presumably. And how do we benchmark whether it's harmless error or something else? I understand the question. I think one way is we can look at the specific. Let me pause it for the conspiracy charge, for example. And I'll get to that because I have serious questions about whether that could be sustained. But that might be different. That's different than this question. That is.  For example, why would it not be harmless? Well, the jury could infer from the government's failure to call him that maybe Mr. Bejaran wouldn't have said, Oh, well, I have an agreement to, you know, downstream distribute these drugs. What did we say in the car? I said, here's the money. Here's the drugs. This topic of who I was going to sell them to never came up. Have a nice day. Have a nice day. Four times quick. That is a clear example of why this could not be harmless specifically as the conspiracy charge. And I think another, we believe another manner of analyzing the harmlessness question has to come from the perspective. What about on the other charges? That's where I was going, Your Honor. Not from the perspective of what necessarily Mr. Bejaran would have said. This is not, the argument is not whether he should have been called. The argument is whether the jury could have drawn a permissibly a reasonable inference. So maybe the jury thinks, well, the government doesn't call their main witness. Something fishy going on. Now, the Ninth Circuit model instructions say a reasonable doubt can be based on a lack of evidence. And we tip, it's in the model instruction. And we typically argue that often, that the government simply has not met its burden or there is a hole. And we tell the jury, look, there's a hole. You want to know? You want to know X? You want to know Y? Didn't you argue, weren't you permitted to make that full argument here? Well, we started to make part of that argument. And then we turned to, then that's exactly when the objection, when we start talking about Mr. Bejaran, what's in Mr. Bejaran's mind, what he saw, that's when the objection comes in. And that's when it's sustained. But you are permitted to argue there's no agreement here. You have to, the government has a burden on whether there's an agreement. Correct. There is no agreement here. There's no evidence of an agreement. You weren't restricted on that, correct? Right, Your Honor. And I think I probably misspoke a little bit. What I was trying to suggest is that the jury could take, had Judge Kaczynski's words in Kujain prevailed upon the district court and the district court says, yes, you can draw that inference, it's permissible, the jury could have said, well, let me draw that inference. Well, if the main witness, the only person who knew what was going on in the car, if he was, you know, I don't know, checking the time or ordering a pizza, if the main witness who could have clarified that for us didn't come, maybe I do have some serious doubts about the government's case. And that's why we believe that not only as to the conspiracy, but the failure of the missing witness instruction with the preclusion of the argument, with the sua sponte instruction, rendered the trial unfair. If you were successful on the conspiracy count, does it change anything? Yes. Because of the mandatories? Yes, it changes. What does it change? So it changes to, as a practical matter, it changes the special assessment by $100. The special assessment, does it change anything else? Well, other than the fact that this court has often talked about the stigma of a felony conviction, that particular stigma would be removed of that conspiracy charge. But you're right that the mandatory minimums would still remain for the substantive counts over 50 grams. Turning, if I can, to the conspiracy argument, we firmly believe that he was entitled to a judgment of acquittal on the conspiracy count. In a light most favorable to the government, the evidence was legally insufficient to establish proof, beyond a reasonable doubt, of an agreement to commit a crime other than the crime that consisted of the sale itself. And I was just quoting to you from Lennox. And again, I'll do so. Proof that the defendant sold drugs to other individuals does not prove the existence of a conspiracy. Rather, the government must show not only that the defendant gave drugs to other people, knowing they would further distribute them, but also that he had an agreement with these individuals to so further distribute the drugs. The mere fact that the defendant sold an alleged co-conspirator a quantity of cocaine or other drugs, too large for personal use, and therefore must have known that the alleged co-conspirator was planning to resell it, is insufficient to prove conspiracy. This is, again, a direct quote from Lennox. The sale of quantities of controlled substances without more cannot sustain a conspiracy conviction. And we would point the court specifically to the Seventh Circuit's decision in Thomas, which dovetails very nicely, in our view, with Lennox. And there, they say, The one who deals in larger quantities of narcotics will invariably realize that his buyer intends to resell and that in all likelihood he will have help from others in doing so. That knowledge alone does not render the seller liable as a co-conspirator. Here, there was no evidence of an agreement with Behran beyond sales. No testimony as to the substance of any conversations. Behran critically could not contact Mr. Ramirez. What kind of co-conspirator on September 11th, Mr. Behran has thousands of dollars in his pocket, can't contact the co-conspirator to make a buy. The sales were quick. They were in public. They were for cash. One sale that Detective Reed testified about, Mr. Ramirez wasn't even present. That was the August sale where Mr. Behran and the CI, the confidential informant, were present. Now, finally, as I see I'm running very short on time, finally, the government's recent invention of a conspiracy theory about Mark Johnson. I think the district court said it best at excerpts of Record 371. There is no evidence about this individual, Mr. Mark Johnson, other than the fact that his name appears in some records. That wasn't part of their argument. They never argue it to the jury. We point out in our briefs even their own record citations basically don't reference Mark Johnson. It's a recent invention. It wasn't submitted to the jury, and it doesn't exist. There was no proof beyond a reasonable doubt in the light most favorable to the government of a conspiracy. So we would ask you to reverse on that count and grant the judgment of acquittal. Thank you. We'll hear from the government. May it please the Court. Fred Schaffer on behalf of the United States. Your Honors, with regards to a missing witness instruction, there are two grounds for that instruction or two requirements, if you will, the prerequisites. The witness being peculiarly within the power of one party to call. Maybe so, but if you get past the missing witness instruction, what the district judge said was clearly wrong about speculation. I mean, that's exactly what the jury may and should do. I mean, they're allowed to say, look, he wasn't here. You can infer that the government would have put him on if he had something useful to say. But he did say that. At the excerpts of Record 372, he said, also with respect to Mr. Bayron, you may consider that. But what good does it do if they can't then speculate some of the reasons why he wasn't put on?  You can consider the fact that there is a witness that may have information out there that didn't testify. And if you believe that information is necessary to find this defendant guilty, consider it. Hold it against the government. What you can't consider is or speculate on is the motive as to why this particular individual did not testify. There's no evidence of that before. Why not? Why is that exactly what juries do? You put facts in front of them, and then they speculate. They say, you know, this is an inference we draw. I mean, calling it speculation is just a pejorative way of referring to an inference. But in this particular instance... I mean, where does a judge get authority to cut off the jury's deliberations and say, look, you can't think about this? Where does that authority come from? It actually comes from the last part of the instruction that was quoted by Ramirez in his brief in Tizor, where it says that if the witness is peculiarly available or is available to be called by both parties, there should be no adverse interest against either parties. There may not be an instruction... Is he available to be called given the nature of this? He hadn't been sentenced at this point. He had not been sentenced, no. He hasn't been sentenced. He has a deal with the government. Yes. I mean, is he open to both sides when he's going to take the Fifth Amendment? That's my question. Is there a case law which suggests he's equally available? But there's no indication that he was going to take the Fifth Amendment at all. There was no indication that he even approached him or his counsel. That just isn't before the court. There's no... That starts the assumption. They didn't try to get him to come, right? That's right. And because that is... The truth is they didn't really want him to come. That's also correct. I mean, that... There's a whole reason why the only reason this comes up for a missing witness instruction is after they'd rested. Where was the up in arms to call Anders Behran before they had rested their case in chief? And, in fact, defend... Our trial counsel for Amir is... Well, but they don't want to call him. They don't have to want to call him. They can point out... They can easily say, look, we don't want to call him. But we point out the government didn't call him. He should hold that against the government. He should infer that if he says something useful to say for the government, he would have been here. The government would have put him on. I don't understand why the... How the judge gets the authority to tell the jury he can't speculate on the reasons why not. I understand the court's concerns with the wording of the instruction. But what the district court in telling that jury to say that they could consider whether or not... What's the point of considering if they can't then, you know, go into the reasons for it? You say, well, we can consider it, but we can't think of why. What is there to think about? What is there to consider? Well, what's to consider is what that witness would provide and that witness's testimony. But he can't speculate about that. They can... I don't know. That wasn't the instruction by the district court. The district court wasn't an instruction to the jury not to speculate what the witness may have said, may have testified to. That was not at all the instruction. In fact, the first sentence was, you may consider that they could have called this witness. It was, you may not speculate as to why a particular party did not call the witness. Okay. How is that different? Because it provides the jury the instruction to certainly consider the witnesses that were before you. I mean, it's basically saying you can't attribute any reason to the government as to why they didn't call him. This is something that you are not to deliberate on. That's what it's saying. Okay. Whereas they want to say, look, you should draw the inference that this witness, if it had something good to say, helpful to the government, the government would have put him on. But that is not an inference that they should be able to put before the court. Why not? Because. Why not? Because they're asking for the missing witness instruction. No, no, no. We're not talking about the witness. Even without the instruction, they're allowed to argue inferences to the jury. The instruction is a different question when you get an instruction. But even if you're not entitled to instruction, you can argue stuff to the jury. You can say, look, these are the inferences you need to draw. Why aren't they entitled to ask the jury to draw the inference that the government would have put him on if he had something useful to say? How does the judge get authority to cut off that line of reasoning on the part of the jury? I don't believe the instruction does that, Your Honor. Well, of course it does. I disagree. The instruction tells the court to consider that the government did not call the witness. And in so doing, the reasonable reading of that instruction is that you can consider that if you believe Andres Bejaran had testimony that was irrelevant, you should consider the fact that you don't have that testimony in front of you. But they want to argue more. They want to argue that, look, they talked to him probably, and he had stuff to say that was not helpful to their case here, and that's why they didn't put him on, and that's what we want you to infer from these circumstances. Right. It's not an inevitable chain of logic, but why is that perfectly okay for the jury to do? And why is it perfectly okay for them to ask the jury to do that? And what business is it of the judge to put a thumb on the scale and help the government in this way? The judge did not do that, but that is an end run to dovetail back into getting the witnessing witness instruction to the back door. But there's a big difference between getting an instruction from the court and arguing to the jury. You understand that difference, don't you? Certainly. So this is not a back way of getting the instruction. This is not a way of getting the judge to instruct the jury in a particular way. It is a way of saying, look, we're not going to argue to you. We're not saying the judge instructs you to do anything. You're not being commanded to do anything, but we want to tell you to use this chain of reasoning. But you were essentially saying then that the jury can be instructed to draw an adverse inference. You say instructed, but it's not instructed. You know, you keep using the word instructed, and we're not going to make any progress here if you keep using that word, because instructed is something the judge does. That's what I'm talking about. I'm sorry. The judge's words, Your Honor. I'm sorry. He didn't have to use any words. He didn't have to say anything on that part. He did not have to say anything at all. Correct, Your Honor. He did not. I shouldn't say he did not have to. He could have chosen not to say anything. Absolutely, that's correct. So it's not like that. You know, you keep saying they want an instruction, but they didn't want an instruction. I understand what Your Honor is saying. I understand they want an instruction. Maybe they're not entitled to that. Yes. But this is not a way of getting the judge to instruct them in a particular way. This is just saying get out of the way. Don't stand in the way of the jury discussing this. And I understand my disagreement is that once the court decided to do so, I believe to give this instruction without objection by defense counsel.  Well, it's not like he said I'm going to give this instruction and there was a chance to object. He just said I'm going to give some instruction, and then he goes ahead and gives it. This is not like you give proposed instructions and ask lawyers to object, right? I actually believe that they had two chances to object to the court providing instruction. One, when they were outside the presence of the jury when the court said, I'm going to give an instruction with regards to this matter. And the second, when the court did give that instruction either during that particular time or after the end of that particular argument and provide the court and be like, we disagree. We object to the wording of the instruction that you provided to this jury. There was none. There was none whatsoever by defense counsel. And I understand this court's concern once the court did that. But in so doing, Judge Miller told that court or I'm sorry, told that jury, consider the evidence, consider the witnesses that were and were not called. That's accurate. Don't draw adverse inferences essentially against either party. That's accurate. Why is that accurate? Why isn't the defendant entitled to have the jury draw adverse inferences against the government if it could persuade the jury that the government could have put the witness on? And that's because we come back to the missing witness instruction, the prerequisites, which is because they could have called this witness themselves. That's the bottom line. They could have. I don't understand what difference that makes. You say we want an inference against the fact that the government called them. Yes. The fact that we could have called them too is essentially irrelevant. Well, that's not irrelevant under the way the pattern instruction reads is what you're saying, correct? That's right. You don't get the instruction. You're not to make an inference if the witness is equally available to both parties. That's correct. No, no, no. It says you're not to give an instruction. It doesn't say anything about drawing an inference. It says you're not entitled to instruction if both of you can call it. And that makes perfect sense. If the witness is within the peculiar control of the government and not the defendant, then you can get an instruction. But if it's not, why can't you draw an inference? Where does that say you can't draw an inference? I believe it's in the last part of the missing witness instruction. It is. In fact, in the missing witness instruction, the last sentence. If you want a missing witness instruction, if you want a missing witness instruction, but you say, okay, we give up on the missing witness instruction. Now we just want to argue an inference. What does the missing witness? Because the missing witness instruction tells you you don't get to have that inference if you could have called the witness yourself. No, you don't get an instruction. You don't get an instruction, which is something much stronger than having the lawyer just argue the inference. I disagree. And the last part of the missing witness instruction itself that is cited in the cases says that. No adverse inferences if the witness could have been called by other party. Not no instruction. It says no adverse inferences. It's cited in Ramirez's brief from the Tizor case. It says no conclusion should be drawn, however, with regard to a witness who is equally available to both parties or where the testimony of that witness would be merely cumulative. This witness was available to both parties. Well, that's if you give the first sentence that says you can draw a missing witness instruction, but not if these other circumstances are true. But how does the first part in any way prejudice Ramirez? If anything, it slants in his favor because it draws attention to the fact of the government being able to call him. In fact, the district court, if it was to even be more objective and down the line, it would say you may consider the fact that Andres Bejaran was an individual that could have been called by either side. Both parties had the power of subpoena. But you should not draw an inference as to why either party didn't call him. That would have been entirely accurate. I don't want to cut off questioning on this, but I do have a question about the conspiracy, which concerns me because 101, you need an agreement. Yes. We don't have Mr. Bejaran. And you say, well, we don't need him. So all we have is some guy sitting in a car selling drugs. Where is the agreement? What's the evidence? What I would say is that the agreement here is certainly circumstantial. Correct? Because neither party to- That would be insurance. But what I would also say is this isn't an instance where Andres Bejaran was given the money, went over to Michael Ray Ramirez's house, picked up an ounce or two ounces or a quarter pound of methamphetamine, brought it back, and handed it over. That's, I think, one of the reasons. It distinguishes it from the Thomas case in the Seventh Circuit. Here, on at least two occasions, Michael Ray Ramirez was within eyeshot of Andres Bejaran getting out or getting the money from the customer, walking over, handing the money to Michael Ray Ramirez, getting the methamphetamine, bringing it back, handing it to the customer. Michael Ray Ramirez didn't do that. I can be a customer sitting over there at this table, and I'll point to someone else, out there, and we're dealing, we're selling. I don't know. There's no relationship in terms of the agreement that we're going to do. I mean, he might be close by, but that's for my convenience because I don't really want to risk other issues. Of course, I don't know he's sitting there with an informant. But if our relationship is buyer and seller, we know that seems to be established, but we don't have anything beyond that. So you're saying the fact that the downstream buyer is in proximity is the basis for the agreement between the buyer and seller? And because Michael Ray Ramirez is in eyeshot of seeing this individual take the money from the customer, go over and hand it over to Michael Ramirez and bring it back. I mean, I have an agreement. I mean, I don't even get a cut. I don't get a cut. I mean, I'm just buying and selling. I know, look, he probably knows that something is going to happen to this, but he doesn't, there's no other information, it seems to me. What does the eyeshot have to do with it? What does it matter whether he's an eyeshot or he goes around the corner? Because when the Seventh Circuit, and my friend brought this up, when the Seventh Circuit said this, they were talking about, does everyone think they're going to resell a quarter pound of drugs? Probably. But when he went over and handed the drugs over, there's no evidence beyond that. That's not the case here. Michael Ramirez didn't need to guess what Andres Bayeron was going to do with those drugs. He was selling to other individuals. It's not only that. Conspiracy here. I have no idea what you just said. I asked you a straight question and you meandered. Why don't you just answer the question I asked you? I apologize if I didn't. See, this is the thing. You guys hear a question and then you sort of go off. The question is, what does the fact that he's with an eyeshot, what difference does that make if he's with an eyeshot or he's around the corner? Because the reasonable inference that the jury can draw is that Michael Ramirez well knew that Andres Bayeron was selling to other individuals. But knew is not enough. I mean, this is what happens when you sell distribution quantities. People resell them. You don't sell distribution quantities for people to consume. So what difference does it make if they're an eyeshot or they're around the corner or down the street or happens tomorrow? Because the reasonable inference is that Michael Ramirez agreed to provide those drugs knowing they were going to be provided to another person. But that's true of all sales for distribution. I mean, I agree. That's true of all sales for distribution. So then all sales for distribution become conspiracies? All sales for distribution? Yeah, of distribution quantities. If two people are, if an indi- No, no. Distribution, you change the last part there. Distributable quantities, no. That was the point in Thomas. But where the individual, the middleman, if you will, on behalf of the source of- So why not? If you sell somebody a quantity that's a distribution quantity, why don't you infer that they're going to resell it? Personally, I think it's a reasonable inference to draw. But the fact- So under that theory, every sale over a certain amount becomes a conspiracy. To sell to another individual. If you sold a quarter pound to person B, that individual, I believe it's permissible. I believe it's a reasonable inference to believe that. But that isn't the record before this court. But that's the logic of your argument. No. Well, I think it is. I mean, I don't- Why isn't it? I don't disagree that it's necessarily a logical argument, that I would even endorse that argument. But I disagree if this court is taking the position that that's the only thing on the record before it. That's not the case. There was evidence that he was, fronted those drugs. And while counsel may believe that the government forfeited, defense counsel certainly took notice of that evidence because they mentioned Mark Johnson no less than nine times in their closing argument. To say that information wasn't before the jury, that he went immediately from a sale to the Chase Bank, deposited money that was provided to him by Andres Bejaran that was immediately withdrawn, according to the bank records for this court, that's a reasonable inference that the jury could draw that he was fronted those drugs. Could the jury draw the other reasonable inference that when he met Andres Bejaran in that parking lot and saw Andres Bejaran receive money from a customer on two separate occasions, walk to his car that they had agreed that Michael Ramirez would provide methamphetamine to Bejaran to provide it to another individual? Yes. I would say yes. Especially when he saw that individual, or Andres Bejaran, go and deliver the methamphetamine to that individual. And if he had been around the corner, that would be different. It's not that it would have been different. You emphasize especially because... No. I think, well, certainly it would be different as far as the level of proof. Of course it would have been different. But would it have been different in my eyes is the reasonable inference that you can draw when someone provides you a quarter pound of methamphetamine? No. But that's not the record before this court. Okay. Thank you. Yes, Your Honor. Would you like a minute for a bottle? Okay. As to the conspiracy, I think we would submit on Thomas and this Court's decision in Lennox. I believe Lennox specifically says that the government's argument is wrong. It's a matter of law. But I just wanted to clarify something about this missing witness instruction portion because I think that was causing some tension. What the government is talking about in TSOR is a quote of the missing witness instruction from Devitt and Blackmore, which applies to both civil and criminal cases and is just a kind of statement of what the missing witness instruction typically says. It doesn't say you can't draw inferences. It talks about, as you were saying, Your Honor, about what the instruction itself is. That's not controlling. Qajayan is the law of the circuit, and it says that you can. The government here has an agreement. They have a cooperation agreement. Just like Qajayan, they refuse to turn it over. We don't know exactly what it says, but they haven't denied that they have it. I don't know why they won't give it to us. Certainly, just as in Qajayan, it would have made the argument for a missing witness instruction stronger. But your holding in Qajayan is binding. Obviously, the government's burden of proof. We have the Fifth and Sixth Amendment rights. We can ask the jury to draw an inference. That was denied here. That rendered the trial unfair, and we would ask you to reverse the convictions on that basis. Thank you. Okay. Thank you. The case is submitted. We are adjourned.
judges: Kozinski, McKeown, Smith